## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DANIEL P. MCKINNEY,**

      **Plaintiff,**

                               **Civil Action 2:15-cv-2043**
      **v.**                         **Judge Algenon L. Marbley**
                               **Magistrate Judge Elizabeth P. Deavers**

**GOVERNOR JOHN R. KASICH, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Defendants' Motions to Dismiss (ECF Nos. 12, 17, 18, & 19), Plaintiff's Memorandum in Opposition (ECF No. 27), Defendant Payne's Reply (ECF No. 31), and Defendants' Motions to Stay Discovery (ECF Nos. 20 & 22). For the reasons that follow, it is **RECOMMENDED** that Defendants' Motions to Dismiss be **GRANTED**.  Furthermore, Defendants' Motions to Stay Discovery are **GRANTED** pending final disposition of this Report and Recommendation.

## I. BACKGROUND

According to the Complaint, in 2004 Defendants began providing medical care to Plaintiff for a knee injury arising from a June 2003 automobile accident.  (ECF No. 3 at 5.) Plaintiff states that ODRC staff at the Lebanon Correctional Institution provided him with prescription medication but no further diagnostic examination or medical treatment.  (*Id*.) Plaintiff further states that he provided Defendants with the results of a previous MRI examination showing structural damage to his knee that resulted from the 2003 accident.  (*Id*.) According to Plaintiff, Defendants refused to include the MRI results in his medical file and conducted no follow-up procedures or diagnostic tests.  (ECF No. 3 at 6.)  Plaintiff states that

medical staff at ODRC Allen/Oakwood Correctional Institution ("AOCI") saw him on December 27, 2012 for complaints related to his knee. (*Id*.) Plaintiff claims that Defendants, again, failed to conduct necessary diagnostic exams and other medical treatment. (*Id*.)

Plaintiff relates that on February 12, 2014 while at AOCI his knee gave way and he fell. (*Id*.) Plaintiff states that as a result of the fall, in which he "felt his left knee snap," he could not walk under his own power and experienced "extreme pain and suffering." (*Id*.) Plaintiff avers that, although his knee was "visibly grotesquely swollen," the duty officer refused to allow him to be seen by medical personnel without a formal medical services request. (*Id*.) After another officer observed his knee, Plaintiff says he was then allowed to see AOCI medical staff. (*Id*.) According to Plaintiff, medical staff diagnosed the knee as arthritic and did not conduct an x-ray "until several days later" or conduct any other diagnostic procedures. (*Id*.)

According to the Complaint, on March 14, 2014 Plaintiff's "knee developed a huge bulge on the left side of the knee cap and became grotesquely swollen." (ECF No. 3 at 7.) Plaintiff states that, again, he had to submit a formal request for medical treatment to which Defendants did not respond. (*Id*.) Plaintiff claims that he submitted another formal request on March 24, 2014 and was finally seen two days later. (*Id*.) According to Plaintiff, the medical staff "prescribed Ibuprofen, exercise and rest" but otherwise failed to conduct necessary diagnostic procedures or other medical treatment. (*Id*.)

Plaintiff claims that Defendant Perez, an ODRC contract physician, told him that "due to Plaintiff being over the age of forty (40) and the costs associated with the overcrowded conditions of ODRC prisons, ODRC adheres to the policy of restricting ODRC prisoners of Plaintiff's age class (i.e. over 40) from specialized medical diagnosis and treatment, including

referrals to orthopedic specialists, specialized diagnosis and corrective surgical treatment for musculoskeletal injuries similar to Plaintiff's left knee and shoulder injuries." (*Id*.)

According to Plaintiff, after he complained of inadequate medical care, Defendant Factor denied his grievance on April 17, 2014 on the basis of insufficient evidence. (ECF No. 3 at 7-8.) Plaintiff appealed on April 21, 2014. (ECF No. 3 at 8.)

Plaintiff states that on May 16, 2014 his knee again gave way and caused him to fall, injuring his arm, shoulder, and head. (*Id*.) Plaintiff claims that, again, he had to make a formal request for medical treatment. (ECF No. 3 at 8-9.) According to Plaintiff, he had still not received a response to his request one year later. (ECF No. 3 at 9.) Plaintiff claims that he still has not received adequate diagnosis or treatment of his injuries. (*Id*.)

Plaintiff alleges Defendants' "conspiring in the failure to provide for immediate and responsive" medical care constitutes cruel and unusual punishment under the Eighth Amendment and violates Plaintiff's Equal Protection rights and, therefore, violate 42 U.S.C. § 1983 and state tort laws. (ECF No. 3 at 2, 10.) Plaintiff also alleges that Defendants' "pattern of deliberate indifference to Plaintiff's serious medical needs" constitutes cruel and unusual punishment under the Eighth Amendment and, therefore, also violates 42 U.S.C. § 1983 and state tort laws. (*Id*.) Plaintiff seeks $2.5 million jointly and severally against Defendants for their alleged deliberate indifference. (ECF No. 3 at. 11.) In addition, Plaintiff seeks declaratory relief and punitive damages of $250,000.00 each against Defendants Governor Kasich, Mohr, Wilson, Croft, Payne, Strait, Factor, Payne, and OSUMC Director Jane/John Doe. (*Id*.)

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements

3

set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd*., *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'"  *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. Analysis

### A.  Defendant Strait's Prosecutorial Immunity

Defendant Strait is an Assistant Attorney General for the state of Ohio and is being sued for her January 18, 2015 conduct in "drafting documentation and affidavits amounting to falsification and misrepresentation of material facts" that Plaintiff claims prevented him from receiving necessary medical attention.  (ECF No. 3 at 9.)  The Court interprets Plaintiff's allegations to refer to Defendant Strait's filing of a successful Motion for Summary Judgment in the Ohio Court of Claims against Plaintiff on January 22, 2015 that included an affidavit of Defendant Payne.  Defendant's Motion for Summary Judgment *Mckinney v. Ohio Dep't. of Rehab. & Corr.*, No. 2014-00571 (Ohio Ct. Cl. Jan. 22, 2015).

Prosecutors, however, are entitled to absolute immunity from damages for both initiating and prosecuting a case.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in prosecuting them in court.  *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  Prosecutors could not properly perform this duty if every decision carried the potential consequences of personal liability in a suit for damages.  *Id*. Prosecutors, therefore, are extended absolute immunity when the challenged actions are those of an advocate.  *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003).  Immunity is granted not only for actions directly related to initiating and prosecuting a criminal case, however, but also for activities undertaken "in connection with [the] duties in functioning as a prosecutor."  *Id*. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).  The Sixth Circuit has further recognized that immunity is granted to prosecutors "pursuing a civil action" when they are "functioning in an enforcement role and acting as advocates for the state," *Cooper v. Parrish*,

5

203 F.3d 937, 947 (6th Cir. 2000), and when they "undertake the defense of a civil suit" against state officials. *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229 at *1 (6th Cir. July 9, 1990).

Defendant Strait was defending a civil suit against the ODRC when she filed the motion in question. Plaintiff, then, challenges actions Defendant Strait took during the defense of a civil suit against the state. Plaintiff's Complaint contains no allegations that Defendant Strait engaged in any activity outside her role as an advocate in defending against the civil suit. The Undersigned finds, therefore, that under the logic of *Al-Bari* she is entitled to absolute immunity in this matter. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Strait.

**B. Defendant Payne's Witness Immunity**

Defendant Payne, in his role as an expert witness, provided an affidavit in support of Defendant Strait's motion for summary judgment filed against Plaintiff in the Ohio Court of Claims. Affidavit of Stephen R. Payne, M.D. *Mckinney v. Ohio Dep't. of Rehab. & Corr.*, No. 2014-00571 (Ohio Ct. Cl. Jan. 22, 2015). Plaintiff alleges that Defendant Payne's conduct in providing the affidavit constitutes "falsification and misrepresentation of material facts," conspiracy to refuse necessary medical treatment, and conspiracy to violate Plaintiff's Fourteenth Amendment Equal Protection rights. (ECF No. 3 at 9, 10.) Plaintiff's Complaint contains no other factual allegations against Defendant Payne.

The law provides absolute immunity from suit not only for prosecutors when they are carrying out their assigned role in the justice system, but also to witnesses who provide evidence in civil and criminal cases. The immunity does not depend on whether the testimony was truthful, but whether it was given during the course of a trial proceeding. *Briscoe v. LaHue,* 460 U.S. 325 (1983). Witness immunity has long been "well established in English common law and

[is] based on the fact that the threat of liability might prevent witnesses from testifying at all, or might cause them to distort their testimony based on a fear that they might later be held liable." *Barrett v. Marbley*, No. 2:14-CV-0216, 2014 WL 1308697 at *6 (S.D. Ohio Mar. 28, 2014), *report and recommendation adopted*, No. 2:14-CV-0216, 2014 WL 4928950 (S.D. Ohio Oct. 1, 2014).

Either of these occurrences might "deprive the finder of fact of candid, objective, and undistorted evidence." *Briscoe*, 460 U.S. at 333. Weighing the evil of false testimony against the dangers posed by witness liability, "[t]he line has been drawn in favor of absolute immunity from suits for money damages, so that witnesses who testify falsely can be prosecuted for perjury, but they cannot be held civilly liable based solely upon their testimony." *Barrett*, 2014 WL 1308697 at *6. The Sixth Circuit "has held that affidavits submitted on the merits of a case, such as an affidavit filed in support of a dispositive motion, constitute the type of testimony for which absolute immunity is available." *Id*. (citing *Slayton v. Wells Fargo Bank, NA,* 2013 WL 819229 (S.D. Ohio March 5, 2013), *aff'd* 542 F. App'x. 512 (6th Cir. Nov.21, 2013)). The Undersigned finds, therefore, that under these principles Defendant Payne is entitled to absolute immunity in this matter. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Payne.

## C. Plaintiff's Claims Barred by the Rooker-Feldman Doctrine

The Rooker–Feldman doctrine is designed "to prevent the encroachment of federal courts into the business of the state judicial systems." *Immel v. Lumpkin*, No. 2:07-CV-1214, 2009 WL 2255225 at *2 (S.D. Ohio July 27, 2009). It protects the state judicial systems by recognizing that the "independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Squirek v. Law*

7

*Offices of Sessoms & Rogers, P.A.*, 2003 WL 21026580 (M.D. N.C. May 5, 2003) (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000)).  Therefore, if a Plaintiff cannot succeed on a federal claim without requiring a district court to re-examine issues already decided by a state court, the district court cannot exercise subject matter jurisdiction.  *Immel*, 2009 WL 2255225 at *2.

Whether the Rooker–Feldman doctrine applies involves a two-part inquiry.  First, the Court considers whether the federal claim is "inextricably intertwined" with the claim asserted in the earlier state court action.  *Hutcherson v. Lauderdale Cnty., Tenn.*, 326 F.3d 747, 755 (6th Cir. 2003).  A claim is "inextricably intertwined" if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.  Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."  *Id.* at 756 (quoting *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998)).  Second, the Court considers "whether the federal claim is a 'general challenge to the constitutionality of the state law applied in the state action,' to which the Rooker–Feldman doctrine would not apply, or 'a specific grievance that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case,' that would raise a Rooker–Feldman bar."  *Id.*

In reviewing Plaintiff's Complaint, the Undersigned finds that Plaintiff's federal claims are inextricably intertwined with the medical malpractice claims he asserted earlier in the Ohio Court of Claims proceedings.  Plaintiff's Complaint arises from the same events that formed the subject matter of his state court case.  His action in this Court essentially seeks to overturn the state court's finding that "the diagnosis, care, and treatment rendered to plaintiff by defendant's medical professionals complied with the applicable standards of care."  *Mckinney v. Ohio Dep't.*

8

*of Rehab. & Corr.*, No. 2014-00571 (Ohio Ct. Cl. Mar. 16, 2015).  To meet Plaintiff's demand, the Court would be required to conduct a direct review of the state proceedings.  The relief sought by Plaintiff against Defendants is, therefore, clearly barred by the Rooker–Feldman doctrine.  Accordingly, the Undersigned finds that the Rooker–Feldman doctrine prohibits this Court from exercising jurisdiction over Plaintiff's claims against Defendants.  Even if the Rooker-Feldman doctrine did not control, however, Plaintiff's claims would still fail, on other grounds, as a matter of law.

**D.  Plaintiff's 42 U.S.C. § 1983 Claims**

Plaintiff brings his federal law claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985).  As a general rule, a plaintiff proceeding under § 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence.  *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  Mere negligence is not actionable under § 1983.  *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

**1. Claims Against Defendants in their Official Capacities**

As a preliminary matter, § 1983 does not permit Plaintiff to bring his claims against Defendants in their official capacity.  Section 1983 imposes liability only upon a "person" who, under color of law, subjects another person to a deprivation of federal rights.  42 U.S.C. § 1983. State officials acting in their official capacity are not "persons" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Plaintiff's § 1983 claims against Defendants in their official capacities, therefore, are not cognizable.  *See Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (holding that § 1983 claims against agents of the state in their official capacity are not cognizable).

**2. Claims Against Defendants Governor Kasich, Mohr, Croft, Wilson, Strait, Payne, Perez, Edwards, and OSUMC Director Jane/John Doe in their Individual Capacities**

Plaintiff cannot establish the liability of a defendant absent a clear showing that the defendant was personally involved in the activities that form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x at 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability").  In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants."  *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).  A defendant must, therefore, play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo*, 423 U.S. at 371.  The mere existence of supervisory relationship to the actual wrongdoer is not enough to establish personal liability.  *Iqbal*, 556 U.S. at 677.

With respect to Defendants Governor Kasich, Mohr, Croft, Wilson, Strait, Payne, Perez, Edwards, and OSUMC Director Jane/John Doe, Plaintiff's Motion for Summary Judgment does not contain any factual allegation that, if proved, would show their personal involvement in the alleged misconduct.[1]  To the extent Plaintiff includes these Defendants in his Complaint, it is merely to make conclusory statements about Defendants' involvement without alleging any facts that would tend demonstrate causation.  (ECF No. 3 at 3, 4, 9, 10.)  Plaintiff never indicates how, if at all, these Defendants were personally involved in any of the alleged misconduct.  Plaintiff's conclusory statements, therefore, do not allow the Court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," even assuming all of his factual allegations are true.  *Iqbal*, 556 U.S. at 678.  Accordingly, the Undersigned finds that, as to these Defendants, Plaintiff's claims fail to state a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

### 3.  Eighth Amendment Claims

The Supreme Court has stated that conditions of incarceration "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first show facts which establish that a sufficiently serious deprivation has occurred.  *Id*.  Seriousness is measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)

---

[1] To the extent Plaintiff has alleged specific acts by Defendants Strait and Payne, they are, as explained above, immune from civil suit.  Plaintiff, however, makes other, generalized allegations against both Defendants, which are analyzed here.

(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Routine discomforts of prison life do not suffice.  *Id*.  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id*. at 9.  Plaintiffs must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  *Id*.  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Liability cannot be predicated solely on negligence.  *Id*.  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A prisoner states an Eighth Amendment claim where he is denied some element of civilized human existence due to deliberate indifference or wantonness.  *Wilson*, 501 U.S. at 298; *Street v. Corr. Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996).  "In sum, this prong of the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere frustration or annoyance."  *Id*. (citing *Hudson*, 503 U.S. at 9–10).  Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983.  *Westlake v. Lucas*, 537 F.2d 857, 860–61 n.5 (6th Cir. 1976).  Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Byrd v. Wilson*, 701 F.2d 592, 595 n. 2 (6th Cir. 1983); *Westlake*, 537 F.2d at 860–61 n.5.  Furthermore,  "[w]here a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Westlake*, 537 F.2d at 860 n. 5).

Plaintiff asserts violations of the Eighth Amendment to the Constitution arising from Defendants' failure to provide certain diagnostic procedures and medical treatment in addition the treatment actually received.  The essence of Plaintiff's claim, then, is that Defendants provided him with inadequate medical care and were negligent in their diagnosis and treatment. Even assuming that his allegations are true, therefore, the Undersigned finds that Plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted against Defendants.

**D.  Plaintiff's Claims under 42 U.S.C. § 1985(3) and § 1986**

42 U.S.C. § 1985(3) provides in relevant part that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

During Reconstruction, Congress passed § 1985(3) in order to provide a cause of action against participants in private conspiracies to deprive others "of rights secured by the law to all." *Griffin v. Breckenridge,* 403 U.S. 88, 101 (1971).  "A plaintiff makes out a valid cause of action under § 1985(3) by demonstrating: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen."  *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 222-23 (6th Cir.

13

1991).  In order to plead a conspiracy under § 1985(3), Plaintiff must allege facts that, if true, would show that Defendants either acted in concert or in furtherance of a common objective to injure him.  *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  Conspiracy claims must be pled with some degree of specificity.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  Vague and conclusory allegations unsupported by materials facts are not sufficient to state a conspiracy claim.  *Id*.  Section 1986 creates a cause of action for a knowing failure to prevent wrongful acts pursuant to a conspiracy to interfere with civil rights.  42 U.S.C. § 1986.  Any defendants with knowledge of a §1985(3) conspiracy who, through negligence, fail to prevent the discriminatory acts can be liable under § 1986.[1]

In his Complaint, Plaintiff asserts that Defendants conduct in failing to provide certain diagnostic procedures and medical treatment amounts to a "conspiracy to deprive Plaintiff and Ohio Department of Rehabilitation and Corrections . . . prison inmates of Plaintiff's class—being indigent and over forty (40) years of age requiring immediate and responsive medical treatment for serious medical injuries/needs—from the equal protection, civil rights, privileges and immunities under the laws of the United States Constitution."  (ECF No. 3 at 10.)  Plaintiff, however, offers nothing more than the conclusory allegation that Defendants acted in concert.  Plaintiff fails to make sufficient factual allegations to establish any sort of "meeting of the minds" or to link any of the alleged conspirators in a conspiracy to deprive him of his constitutional rights.  The Undersigned, therefore, find that Plaintiff has failed to state a claim

---

[1] 42 U.S.C. § 1986 provides, in relevant part:

> Every person who, having knowledge that any wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

under 42 U.S.C. § 1985 upon which relief can be granted.  Moreover, to the extent Plaintiff intended to assert a claim under § 1986, this claim likewise fails because he has not pled facts which demonstrate a conspiracy.

**E.  Defendants' Immunity from State Law Claims**

The Court is not in a position to determine whether Defendants are immune from Plaintiff's unspecified state law tort claims.  Until the Ohio Court of Claims determines that they are not immune, however, Plaintiff's claims are not cognizable.  With respect to a state law tort claim, a federal court sits as a court of the forum state and is bound to apply its substantive law. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09 (1945).  The Sixth Circuit has recognized "Ohio law requires that, prior to asserting a claim against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Ohio Revised Code § 9.86."  *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989).  Prior to the Court of Claims' determination, then, there is no claim under Ohio law upon which relief can be granted against Defendants in their individual capacities.  The only cognizable claims, at least initially, lie against the State of Ohio in the Court of Claims.  *Id.* (citing Ohio Rev. Code  Ann. § 2743.02(F)).  Accordingly, the Undersigned finds that the Court cannot exercise jurisdiction over Plaintiff's state law tort claims until such time as a cause of action against Defendants is recognized under Ohio law.

## IV. CONCLUSION

For the reasons explained above, the Undersigned **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED**.  (ECF Nos. 12, 17, 18, & 19.)  Defendants' Motions to Stay Discovery are, therefore, **GRANTED** pending final disposition of this Report and Recommendation.  (ECF Nos. 20 & 22.)

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, it may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date:  November 23, 2015                                   */s/ Elizabeth A. Preston Deavers*
                                                          ELIZABETH A. PRESTON DEAVERS
                                                          UNITED STATES MAGISTRATE JUDGE