IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL P. MCKINNEY,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:15-cv-2043 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| **GOVERNOR JOHN R. KASICH,** *et. al*. | : | Magistrate Judge Deavers |
| | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court for consideration of Plaintiff's Objections to the November 23, 2015 Magistrate Judge's **Report and Recommendation** (Doc. 36), and Plaintiff's Objections to the November 24, 2015 Magistrate Judge's **Report and Recommendation** (Doc. 37). Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED**. The Court **ADOPTS** the Magistrate Judge's November 23, and November 24, 2015 **Reports and Recommendations**. Accordingly, Plaintiff's case is **DISMISSED.**

### I.  BACKGROUND

In 2004, Plaintiff, a state inmate proceeding pro se, began receiving medical treatment from the Defendants for a knee injury arising from a June 2003 automobile accident. (Doc. 3 at 5.) Plaintiff alleges that the Ohio Department of Rehabilitation and Correction ("ODRC") staff at the Lebanon Correctional Institution provided him with prescription medication for his knee injury but conducted no further diagnostic examination or medical treatment when he complained of pain. (*Id.*)  Plaintiff further alleges that he provided Defendants with the results of a previous MRI examination showing the extent of the injury that had resulted from the 2003

1

automobile accident, but that Defendants refused to include these results in his medical file. (*Id.* at 6.) According to Plaintiff, medical staff at ODRC Allen/Oakwood Correctional Institution ("AOCI") saw him on December 27, 2012 for complaints related to his knee and Defendants again failed to conduct diagnostic exams or administer other medical treatment. (*Id.*)

Plaintiff states that on February 12, 2014, while at AOCI, he fell as a result of his knee injury. *Id.* Plaintiff states that after the fall in which he "felt his left knee snap," he could not walk under his own power and experienced "extreme pain and suffering." (*Id.*) Plaintiff further states that the duty officer refused to allow him to be seen by medical personnel at the facility without a formal medical services request. (*Id.*) Plaintiff says he was then allowed to see AOCI medical staff after another officer observed his knee. (*Id.*) According to Plaintiff, medical staff attributed his knee problems to arthritis and did not conduct an x-ray "until several days later" or perform any other diagnostic procedures. (*Id.*)

On March 14, 2014 Plaintiff alleges that his knee developed "a huge bulge on the left side" and "became grotesquely swollen." (*Id.* at 7.) Plaintiff states that he submitted a formal request for medical treatment to which Defendants did not respond. (*Id.*) Plaintiff claims that he submitted another formal request on March 24, 2014 and was finally seen two days later. (*Id.*) According to Plaintiff, the medical staff "prescribed Ibuprofen, exercise and rest" but otherwise failed to provide any medical treatment. (*Id.*)

Plaintiff claims that Defendant Perez, an ODRC contract physician, told him that "due to Plaintiff being over the age of forty (40) and the costs associated with the overcrowded conditions of ODRC prisons, ODRC adheres to the policy of restricting ODRC prisoners of Plaintiff's age class (i.e. over 40) from specialized medical diagnosis and treatment, including referrals to orthopedic specialists, specialized diagnosis and corrective surgical treatment for

2

musculoskeletal injuries similar to Plaintiff's left knee and shoulder injuries." (*Id.*) According to Plaintiff, he filed a grievance alleging inadequate medical care, which Defendant Factor denied on April 17, 2014 on the basis of insufficient evidence. (*Id.* at 7-8.) Plaintiff appealed on April 21, 2014. (*Id.* at 8.)

Plaintiff states that on May 16, 2014 his knee again gave way and caused him to fall, injuring his arm, shoulder, and head. *Id.* Plaintiff claims that, again, he made a formal request for medical treatment and to date has not received adequate diagnosis or treatment of his injuries. (Doc. 3 at 8-9.)

Plaintiff alleges that Defendants have conspired in their failure to provide for immediate and responsive medical care and have been deliberately indifferent to his serious medical needs. He brings a claim under 42 U.S.C. § 1983, contending that Defendants have violated his right to be free of cruel and unusual punishment under the Eighth Amendment and his right to equal protection of the laws under the Fourteenth Amendment. He also brings claims under state tort laws. (Doc. 3 at 2, 10.) Plaintiff seeks $2.5 million jointly and severally against Defendants for their alleged deliberate indifference. (Doc. 3 at. 11.) Additionally, Plaintiff seeks declaratory relief and punitive damages of $250,000.00 each against Defendants Governor Kasich, Mohr, Wilson, Croft, Payne, Strait, Factor, Payne, and Ohio State University Medical Center Director Jane/John Doe. *Id.*

The Magistrate Judge issued a Report and Recommendation (Doc. 36) recommending that the motions to dismiss of Defendants Strait, Payne, Kasich, Mohr, Factor, Croft, Wilson, Perez, Edwards, Lin, Rable, and OSUMC Director Doe be granted for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  The Magistrate Judge issued a second

3

Report and Recommendation recommending that Plaintiffs' claims against Defendant Lawson be dismissed for failure to state a claim for relief.  (Doc. 37.)  Plaintiff objected to both.

## II.     STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).  General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the magistrate [judge]'s report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Nevertheless, the objections of a petitioner appearing pro se will be construed liberally and held to less stringent standards than documents drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

In order to state a claim upon which relief may be granted, a plaintiff must satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a).  Rule 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3).  The purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).  While this notice pleading standard does not require detailed factual allegations, it does require more than the bare assertion of legal conclusions. *Twombly*, 550 U.S. at 555.  Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-

4

me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, a complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Id.* at 679.

### III. ANALYSIS

#### A. Defendant Strait's Prosecutorial Immunity

Defendant Strait is an Assistant Attorney General for the State of Ohio. Plaintiff alleges that, on January 18, 2015, Defendant Strait "draft[ed] documentation and affidavits amounting to falsification and misrepresentation of material facts" (Doc. 3 at 9) that Plaintiff claims prevented him from receiving necessary medical attention, presumably when she filed a successful motion for summary judgment in the Ohio Court of Claims against Plaintiff on January 22, 2015 that included an affidavit of Defendant Payne. *See* Def.'s Motion for Summary Judgment, *McKinney v. Ohio Dep't. of Rehab. & Corr.*, No. 2014-00571 (Ohio Ct. Cl. Jan. 22, 2015).

The Magistrate Judge concluded that Defendant Strait had absolute immunity from Plaintiff's claims. (Doc. 36 at 5-6.) Plaintiff objects that at this stage of the litigation he need only allege facts to show that his Eighth and Fourteenth Amendment rights have been violated, but his reading of the law is incorrect. Courts have long recognized, however, that even though § 1983, "on its face, admits of no defense of official immunity," Congress did not intend to abrogate the longstanding immunities of absolute and qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). The Supreme Court has held that prosecutors have absolute immunity from damages for both initiating and prosecuting a case, including presentation of the state's case at trial. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). A prosecutor must exercise his or her best professional judgment both in deciding which suits to

5

bring and in prosecuting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). Without the protection of absolute immunity, prosecutors could not properly perform this duty if every decision carried the potential consequences of personal liability in a suit for damages. *Id*. Prosecutors, therefore, are granted absolute immunity when the challenged actions are those of an advocate, or in connection with duties required to function a prosecutor. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003).

The Sixth Circuit has further recognized that immunity is granted to prosecutors "pursuing a civil action" when they are "functioning in an enforcement role and acting as advocates for the state," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), and when they "undertake the defense of a civil suit" against state officials, *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229 at *1 (6th Cir. July 9, 1990). In *Cooper*, nightclubs offering nude dance performances were seized and temporarily closed pursuant to a Tennessee public nuisance statute. *Id.* at 942. Owners and employees of the nightclubs in *Cooper* brought a civil action against prosecutors under §1983 and state law against state prosecutors and other state actors. *Id*. The Sixth Circuit held that prosecutors were protected by absolute prosecutorial immunity from § 1983 liability for preparing and filing public nuisance and civil forfeiture complaints involving nightclubs, and the state prosecutor did not violate the constitutional rights of owners and employees when he swore to the truth of allegations contained in civil forfeiture and public nuisance complaints. *Id* at 947-50.

Like the prosecutor in *Cooper*, Defendant Strait was defending a civil suit against the ODRC when she filed the motion in question. Plaintiff challenges the actions Defendant Strait took during the defense of a civil suit against the state. Further, Plaintiff's Complaint contains no allegations that Defendant Strait engaged in any activity outside her role as an advocate in

6

defending against Plaintiff's civil suit. The Court finds that under *Cooper*, Defendant Strait is entitled to absolute immunity in this matter. Accordingly, Plaintiff's claims against her must be dismissed.

### B. Defendant Payne's Witness Immunity

Defendant Payne, in his role as an expert witness, provided an affidavit in support of Defendant Strait's motion for summary judgment against Plaintiff in the Ohio Court of Claims. Affidavit of Stephen R. Payne, M.D., *McKinney v. Ohio Dep't. of Rehab. & Corr.*, No. 2014-00571 (Ohio Ct. Cl. Jan. 22, 2015). Plaintiff alleges that Defendant Payne's conduct in providing the affidavit constitutes "falsification and misrepresentation of material facts," conspiracy to refuse necessary medical treatment, and conspiracy to violate Plaintiff's Fourteenth Amendment Equal Protection rights. (Doc. 3 at 9, 10.)

The Magistrate Judge found that Defendant Payne was entitled to absolute immunity as a witness. Like his objection to the finding of immunity as to Defendant Strait, Plaintiff's objection focuses on the merits of his claim and not on the question of immunity.

In addition to prosecutorial immunity, the law provides absolute immunity from suit to witnesses who provide evidence in civil and criminal cases. The immunity does not depend on whether the testimony was truthful, but whether it was given during the course of a trial proceeding. *Briscoe v. LaHue*, 460 U.S. 325 (1983). Witness immunity has long been "well established in English common law and [is] based on the fact that the threat of liability might prevent witnesses from testifying at all, or might cause them to distort their testimony based on a fear that they might later be held liable." *Barrett v. Marbley*, No. 2:14-CV-0216, 2014 WL 1308697 at *6 (S.D. Ohio Mar. 28, 2014), *report and recommendation adopted*, No. 2:14-CV-0216, 2014 WL 4928950 (S.D. Ohio Oct. 1, 2014). Even if a witness gives false testimony, she is

7

immune from a suit for money damages; witnesses who testify falsely can be prosecuted for perjury, but they cannot be held civilly liable based solely upon their testimony. *Barrett*, 2014 WL 1308697 at *6.

Under Ohio law, "affidavits submitted on the merits of a case, such as an affidavit filed in support of a dispositive motion, constitute the type of testimony for which absolute immunity is available." *Id*. (citing *Slayton v. Wells Fargo Bank, NA*, No. 2:12-CV-283, 2013 WL 819229, at *6 (S.D. Ohio Mar. 5, 2013), *aff'd*, 542 F. App'x 512 (6th Cir. 2013)). Accordingly, Defendant Payne is entitled to absolute immunity in this matter, and Plaintiffs' claims against Defendant Payne must be dismissed.

### C. Plaintiff's Claims Barred by the *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine is designed "to prevent the encroachment of federal courts into the business of the state judicial systems." *Immel v. Lumpkin*, No. 2:07-CV-1214, 2009 WL 2255225 at *2 (S.D. Ohio July 27, 2009). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *ExxonMobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Therefore, if a Plaintiff cannot succeed on a federal claim without requiring a district court to re-examine issues already decided by a state court, the district court cannot exercise subject-matter jurisdiction. *Immel*, 2009 WL 2255225 at *2.

Whether the *Rooker–Feldman* doctrine applies involves a two-part inquiry. First, the Court considers whether the federal claim is "inextricably intertwined" with the claim asserted in the earlier state court action. *Hutcherson v. Lauderdale Cnty., Tenn.*, 326 F.3d 747, 755 (6th Cir. 2003). A claim is "inextricably intertwined" if "the federal claim succeeds only to the extent that

8

the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* at 756 (quoting *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998)). Second, the Court considers "whether the federal claim is a 'general challenge to the constitutionality of the state law applied in the state action,' to which the *Rooker–Feldman* doctrine would not apply, or 'a specific grievance that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case,' that would raise a *Rooker–Feldman* bar." *Id.* (quoting *Catz*, 142 F.3d at 293).

The Magistrate Judge found that Plaintiff's federal claims were inextricably intertwined with the medical malpractice claims he brought in the Ohio Court of Claims because his action before this Court essentially seeks to overturn the state court's finding that "the diagnosis, care, and treatment rendered to plaintiff by defendant's medical professionals complied with the applicable standards of care." *McKinney v. Ohio Dep't. of Rehab. & Corr.*, No. 2014-00571 (Ohio Ct. Cl. Mar. 16, 2015). In his objection, Plaintiff argues that because he sought relief under state tort law in state court, "the state court judgment and relevant evidence is not even the subject matter of this action." (Doc. 40 at 12.) This is a misreading of the *Rooker-Feldman* doctrine. Even if the claims at issue differ, McKinney's federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Therefore, because a ruling in his favor on the federal claims before this Court would necessitate a finding that the state court decision was wrongly decided, Plaintiff's claims against Defendants are barred by *Rooker-Feldman*. And even if *Rooker-Feldman* did not control, Plaintiff's claims would still fail, on other grounds.

9

### D. Plaintiff's 42 U.S.C. § 1983 Claims

Plaintiff brings his federal law claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

As a general rule, a plaintiff proceeding under § 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Mere negligence is not actionable under § 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

#### *1. Claims Against Defendants in their Official Capacities*

The Magistrate Judge found that § 1983 does not permit Plaintiff to bring his claims against Defendants in their official capacities because § 1983 "imposes liability only upon a 'person' who, under color of law, subjects another person to a deprivation of federal rights" (42 U.S.C. §1983) and "[s]tate officials acting in their official capacity are not 'persons' under § 1983." (Doc. 36 at 10)(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In his objection, Plaintiff does not dispute that state officials acting in their official capacity are not "persons" under § 1983.  But he argues that the Complaint, when read in context with his alleged Eighth Amendment violations, shows alleged constitutional violations which "result from the actual policies and customs of the Defendants[,]" and that these violations lay the foundation for a proper § 1983 cause of action. (Doc. 40 at 14).

Plaintiff's objection, however, fails to allege any actual policy or custom of any Defendants, relying only on an allegation that Defendants Kasich, Mohr, Wilson, Croft, Payne,

10

Strait, and Factor refused to rectify a known pattern of deliberate indifference to *Plaintiff's* serious medical needs. This is insufficient to survive a motion to dismiss under Rule 12(b)(6).

> *2. Claims Against Defendants Governor Kasich, Mohr, Croft, Wilson, Strait, Payne, Perez, Edwards, and OSUMC Director Jane/John Doe in their Individual Capacities*

Plaintiff cannot establish the liability of a defendant absent a clear showing of a Defendant's personal involvement in the activities that form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). The mere existence of a supervisory relationship to the actual wrongdoer is not enough to establish personal liability. *Iqbal*, 556 U.S. at 677.

The Magistrate Judge held that "with respect to Defendants Governor Kasich, Mohr, Croft, Wilson, Strait, Payne, Perez, Edwards, and OSUMC Director Jane/John Doe, Plaintiff's [Complaint] does not contain any factual allegation that, if proved, would show their personal involvement in the alleged misconduct." (Doc. 36 at 11). Because the Magistrate Judge could not "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, even assuming all of his factual allegations are true, she recommended that the Court dismiss Plaintiff's claims against these Defendants in their individual capacities.

In his objection, Plaintiff argues that his Complaint "*unequivocally* ' indicates how … these Defendants were personally involved… in the alleged misconduct.'" (Doc. 40 at 16)(quoting Doc. 36 at 11). He then fails to describe how any of these Defendants were personally involved in an individual capacity with any of the misconduct alleged in the Complaint; instead, Plaintiff's inclusion of these Defendants extends merely to conclusory

11

statements about their involvement without alleging any facts that would tend demonstrate causation. (*See* Doc. 3 at 3, 4, 9, 10.)

*3. Eighth Amendment Claims*

In order to state an Eighth Amendment claim, a plaintiff must first show facts which establish that a sufficiently serious deprivation has occurred. *Id*. The seriousness of a deprivation is measured against "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A deprivation that amounts to the type of routine discomfort associated with prison life is not serious enough to constitute a violation of the Eighth Amendment. *Id*. In the context of the Eighth Amendment, only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate constitutional protection. *Id*. at 9. Plaintiffs must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere negligence is not enough to satisfy this subjective element. *Id*.

A prisoner traditionally states an Eighth Amendment claim where he is denied some element of civilized human existence due to deliberate indifference or wantonness. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Street v. Corr. Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Accordingly, "this prong of the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere frustration or annoyance." *Id*. (citing *Hudson*, 503 U.S. at 9-10). Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake v. Lucas*, 537 F.2d 857,

12

860 (6th Cir. 1976). Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983); *Westlake*, 537 F.2d at 860-61.  When a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake*, 537 F.2d at 860 n. 5).  Accordingly, the Magistrate Judge concluded that Plaintiff's Eighth Amendment claim was not actionable because an alleged failure to provide diagnostic tests and additional treatment was a contention that the medical care was merely inadequate.

In his objection, Plaintiff asserts that Defendants' failure to provide certain diagnostic procedures and medical treatment in addition to the treatment actually received constitutes a violation of his Eighth Amendment rights. As the Magistrate Judge indicated, the essence of Plaintiff's claim, then, is that Defendants provided him with inadequate medical care and were negligent in their diagnosis and treatment. This Court is not in a position to second guess the professional medical staff at ODRC. Further, the case on which Plaintiff relies for the proposition that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all," *Westlake*, 537 F.2d at 860 n. 5, does not help his case.  In *Westlake*, the inmate suffered from an ulcer and was denied a special diet and medication, not permitted to see a doctor for several days, and, after vomiting blood, was given only a mild antacid.  *Id.* at 859.  Here, by contrast, Plaintiff did receive some treatment and the Court cannot say that a failure to provide him further treatment under the circumstances was "so woefully inadequate as to amount to no treatment at all." *Id.* at 860 n. 5.

### E. Plaintiff's Claims under 42 U.S.C. § 1985(3) and § 1986

42 U.S.C. § 1985(3) provides in relevant part that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a cause of cause of action under § 1985(3) a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen." *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991). To show a conspiracy under § 1985(3), Plaintiff must allege facts that, if true, would show that Defendants either acted in concert or in furtherance of a common objective to injure him. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Conspiracy claims must be pled with some degree of specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Vague and conclusory allegations unsupported by materials facts are not sufficient to state a conspiracy claim. *Id.*

Section 1986 creates a cause of action for a knowing failure to prevent wrongful acts pursuant to a conspiracy to interfere with civil rights. 42 U.S.C. § 1986. Any defendants with knowledge of a § 1985(3) conspiracy who, through negligence, fail to prevent the discriminatory acts can be liable under § 1986. *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014).

The Magistrate Judge held that, because Plaintiff failed to make sufficient factual allegations to establish any sort of "meeting of the minds" or to link any of the alleged conspirators in a conspiracy to deprive him of his constitutional rights, Plaintiff failed to state a claim for relief under 42 U.S.C. § 1985(3). In his objection, Plaintiff asserts that Defendants' conduct in failing to provide certain diagnostic procedures and medical treatment amounted to a conspiracy to deprive him, as a member of the class of inmates over the age of 40, of medical treatment, which violates the Fourteenth Amendment Equal Protection Clause. (Doc. 40 at 23.) Plaintiff, however, offers nothing more than the conclusory allegation that Defendants acted in concert, and he relies on inapposite cases in which the plaintiffs stated with particularity how the defendants acted in concert to deprive the plaintiffs of their constitutional rights. *See, e.g.*, *Griffin v. Breckinridge*, 403 U.S. 88, 102-03 (1971). This Court finds that the plaintiff has failed to allege facts sufficient to establish a "meeting of the minds" or to link any of the alleged conspirators in a conspiracy to deprive him of his constitutional rights. Accordingly, Plaintiff fails to state a claim under 42 U.S.C. § 1985(3) or § 1986.

## F. Defendants' Immunity from State Law Claims

The Magistrate Judge correctly held that the Court is not in a position to determine whether Defendants are immune from Plaintiff's unspecified state law tort claims because Plaintiff's claims are not cognizable until the Ohio Court of Claims determines that the Defendants are not immune. *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). Plaintiff does not address this argument in his objection. Accordingly, the Court cannot exercise jurisdiction over Plaintiff's state law tort claims until such time as a cause of action against Defendants is recognized under Ohio law.

**G. Plaintiff's Claims against Defendant Lawson**

According to the Complaint, Plaintiff asserts claims against Defendant Lawson in both her official capacity as a former Health Care Administrator for Lebanon Correctional Institution, and her individual capacity. (Doc. 3 at 3.) The Magistrate Judge conducted an initial screening of the Plaintiff's Complaint as required by 28 U.S.C. § 1915A, to identify cognizable claims and to recommend dismissal of any claims that were frivolous, malicious, failed to state a claim upon which relief could be granted, or sought relief from a defendant who is immune from such relief, was subject to dismissal. (Doc. 37).  In her November 24, 2015 Report and Recommendation, the Magistrate Judge recommended that the Plaintiff's claims against Defendant Lawson, in her individual and official capacity, be dismissed for the same reasons as against the other Defendants. (Doc. 37 at 11-12).

A general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal. *See Howard*, 932 F.2d at 508-09. "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard*, 932 F.2d at 505). An objection preserves an issue for appeal when it "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. July 18, 1997) (unpublished).

In *Smith*, the Plaintiff's objections discussed issues, particularly arguments concerning errors committed by an ALJ during a Social Security hearing, specific to the Magistrate's Report and Recommendation. The Court of Appeals held that Smith's objections satisfied the standard outlined in *Miller* because his objections alerted the district court to those portions of the magistrate judge's report with which the plaintiff disagreed. *Id*. Here, although Plaintiff's

objection does not specify which arguments apply to Defendant Lawson, the Court finds that Plaintiff's objections to the Magistrate Judge's November 24, 2015 Report and Recommendation (Doc. 40 at 4, 7, 18, 20, 21) are sufficient for the Court to address in its *de novo* review. The Court does not, however, find Plaintiff's Objections to be persuasive for the same reasons addressed in the analysis of the Plaintiff's claims against the other Defendants.  In particular, like the other Defendants, Plaintiff has failed to state a claim for relief against Defendant Lawson because his claims are barred by the *Rooker-Feldman* doctrine.  Second, he cannot state a claim against Defendant Lawson in her individual capacity, nor has he alleged facts that show a plausible Eighth Amendment claim for deliberate indifference under § 1983 or conspiracy claims under § 1985(3) and § 1986. Moreover, Defendant Lawson is immune from the state law claims for the same reasons as the other Defendants.

### III.  CONCLUSION

The Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's November 23, 2015 **Report and Recommendation** (Doc. 36) and the November 24, 2015 **Report and Recommendation**. (Doc. 37.)  Defendants' Motions to Dismiss (Docs. 12, 17, 18, and 19) are **GRANTED**.  Plaintiff's claims are hereby **DISMISSED**.  The Clerk is directed to enter Judgment for Defendants.

**IT IS SO ORDERED.**

    s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 25, 2016**